DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, John Simmons, appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Simmons met S.W., the victim herein, at the end of August, 2007. Shortly after they met, Simmons moved into S.W.'s home. On September 6, 2007, Simmons was involved in an altercation with S.W.'s next-door neighbors and his cousin who lived across the street. Due to the altercation, Simmons obtained a bag of weapons from his grandmother's home, which was down the street. When he arrived back at S.W.'s home, Simmons initiated sexual relations with S.W. The parties disagree as to the subsequent course of events. According to S.W., she refused, and in response, Simmons pointed a knife at her and choked her. S.W. stated that, although she told him no, she removed her clothes. Simmons forced her to have sexual intercourse. She testified that he hurt her and that she was scared. S.W. testified that Simmons *Page 2 
then fell asleep on top of her. The next day, S.W. drove Simmons to his ex-girlfriend's place of employment to retrieve a book. S.W. and Simmons got into a verbal argument regarding the ex-girlfriend. When they returned home, S.W. testified that Simmons physically assaulted her. After the assault, S.W. left to pick up her son at school. S.W. testified that she told the principal that she had been assaulted, and the principal called 911. As a result, Simmons was arrested.
 {¶ 3} Simmons was indicted on September 18, 2007. He was charged with one count of rape, in violation of R.C. 2907.02(A)(2), with a repeat violent offender specification, as defined in R.C. 2929.01(DD), in violation of R.C. 2941.149[2929.14(C)(D)(2)]. In addition, he was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1), with a repeat violent offender specification, as defined in R.C. 2929.01(DD), in violation of R.C. 2941.149 [2929.14(C)(D)(2)]. Finally, he was charged with one count of domestic violence, in violation of R.C. 2919.25(A). He pled not guilty to the charges and waived his right to a jury trial. On October 29, 2007, Simmons filed a motion to appropriate funds to hire an expert witness. The trial court denied this motion. On January 28, 2008, Simmons filed a motion in limine seeking a preliminary ruling to preclude "other acts" evidence, pursuant to Evid. R. 404. The trial court held a hearing on this motion, at which several witnesses testified. The parties agreed that the witnesses' testimony at the hearing would serve as their trial testimony. The trial court did not rule on the motion in limine, but rather, held its ruling in abeyance.
 {¶ 4} On February 25, 2008, the case was tried to the bench. On April 30, 2008, the trial court found Simmons guilty of rape, with a repeat offender specification, and guilty of domestic violence. Simmons was acquitted of felonious assault. The trial court determined Simmons to be a Tier III sex offender. He was sentenced to a total of 20 years of incarceration. *Page 3 
Simmons timely appealed the decision and sentence. He has raised four assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ALLOCATE FUNDS FOR AN EXPERT WITNESS ON BEHALF OF AN INDIGENT DEFENDANT."
 {¶ 5} In his first assignment of error, Simmons contends that the trial court abused its discretion by failing to allocate funds for an expert witness on behalf of an indigent defendant. We do not agree.
 {¶ 6} We review a trial court's decision whether to allow an indigent defendant the resources to obtain an expert witness for an abuse of discretion. Wilmington Steel Products, Inc. v. Cleveland Elec. Illum.Co. (1991), 60 Ohio St.3d 120, 122. In his request for the trial court to authorize expert testimony at the State's expense, "`a defendant must show more than a mere possibility of assistance from an expert. Rather, a defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial.'" State v. Mason (1998), 82 Ohio St.3d 144, 150, quotingState v. Broom (1988), 40 Ohio St.3d 277.
 {¶ 7} In his motion to allocate funds, Simmons explained that he was not contesting the fact that intercourse occurred, only the allegation that the intercourse was not consensual. He explained that "he is in a particular need of a medical expert to review the medical records in order to present testimony that the victim had not suffered a `rape,' but in fact, that the victim had consensual sexual intercourse." Specifically, he stated that a medical expert was necessary because the medical records depicted areas of the female body, and internal views of the female *Page 4 
body, that would be unfamiliar to a layman. While Simmons has stated apossibility of assistance from an expert, he has not shown a reasonable probability that an expert would aid in his defense nor has he shown that the denial of his request would result in an unfair trial. Instead, he contends that in order to "guarantee the reliability of the proceedings; it is essential that defense counsel be provided with the assistance of a medical expert to review the medical records available." Simmons has not shown that the denial of his request would somehow result in an unreliable trial. Mason, supra. We conclude that Simmons has not satisfied his burden to obtain funds for an expert witness. SeeMason, supra.
 {¶ 8} Simmons further requested an expert to review S.W.'s medical records, as they indicated that she was taking numerous medications for chronic conditions, including bipolar disorder and severe depression. Simmons explained that because S.W.'s credibility was at issue, he needed a medical expert to review her medical history to determine her "penchant for truth telling or ability to be aware of her actions could have been compromised." However, the determination of witness credibility is a matter left to the trier of fact, in this case, the jury, to decide. See State v. Griffin, 9th Dist. No. 23459,2007-Ohio-1944, at 10. Therefore, as the jury is entitled to believe or disbelieve a witness, Simmons could not show that the denial of an expert to testify with regard to S.W.'s credibility would have resulted in an unfair trial. See Mason, supra.
 {¶ 9} Finally, we conclude that Simmons was able to obtain the information he sought through cross-examination of the witnesses at trial and therefore even if we were to find that the trial court abused its discretion in denying his request, the error would be harmless. Crim. R. 52(A) ("[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.") *Page 5 
 {¶ 10} Our review of the record reveals that the DOVE nurse that testified regarding examination of S.W.'s vaginal area and her medical treatment was subject to cross-examination, and that the photographs of S.W.'s internal organs were not introduced as evidence. Simmons' counsel asked the DOVE nurse whether it would be possible to see red marks on S.W.'s cervix after a consensual sexual encounter. The DOVE nurse stated that it was possible. Therefore, the medical testimony regarding her condition was not dispositive of whether the sexual contact was consensual or forced.
 {¶ 11} Finally, we note that S.W. testified as to her chronic conditions and the medications prescribed for her. Specifically, she discussed her mental health issues and explained that she had no side effects from the medications she was taking for those problems, and that the medications did not cause her to make things up or tell lies. Simmons' counsel cross-examined S.W. at length on this issue. When asked about her conditions, S.W. explained "I'm pretty stable unless something traumatic happens to me." She stated that mentally she was even keeled and that the medications did not cause physical or mental side effects.
 {¶ 12} As we find that Simmons failed to state with particularity that there was a reasonable probability that a medical expert would aid his defense or that the denial of a medical expert would result in an unfair trial, we conclude that the trial court did not abuse its discretion by denying his motion. Mason, 82 Ohio St.3d at 150. Simmons' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTOR TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT IN VIOLATION OF OHIO STATUTORY LAW AND OHIO RULES OF EVIDENCE 403, 404." *Page 6 
 {¶ 13} In his second assignment of error, Simmons contends that the trial court erred by allowing the prosecutor to introduce evidence about prior separate criminal conduct in violation of the Revised Code and Evid. R. 403 and 404. We do not agree.
 {¶ 14} Simmons filed a motion in limine as a result of the State's notice of intention to use "other acts" evidence pursuant to Evid. R. 404(B) and R.C. 2945.59. Specifically, the State sought to present evidence of prior rapes, attempted rapes, domestic violence, and menacing. The trial court held a hearing on Simmons' motion. At the beginning of the hearing, the State indicated that the parties had agreed that the witnesses' testimony given at the hearing would also serve as their testimony for the bench trial. The State further attempted to introduce medical records of witnesses who would not testify. The trial court made a preliminary decision that the testimony of one witness would be excluded. As to the remaining two witnesses and the medical records, the trial court held its ruling in abeyance until all the evidence had been presented at the bench trial.
 {¶ 15} With regard to the "other acts" evidence, the trial court stated in its judgment entry, that "[t]he Court, in the interests of judicial economy heard the evidence, but held its ruling as to admissibility in abeyance. For the reasons stated herein, the Court does not consider the issue of the other acts." The trial court then stated that once Simmons decided to testify, his felony history became admissible. The trial court noted, and the record supports, that Simmons admitted to the prior offenses of aggravated burglary, sex with a juvenile, domestic violence against his sister and domestic violence against another female victim. Notably, Simmons does not challenge the trial court's determination that by testifying, his felony record became admissible. Simmons' argument instead focuses on the admissibility of the witness testimony at the "other acts" hearing as well as the medical records of the individuals who did not testify. *Page 7 
Simmons contends that this evidence was not admissible and should not have been considered by the trial court. The Ohio Supreme Court has stated that it "indulges in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." (Internal citations and quotations omitted.)State v. Post (1987), 32 Ohio St.3d 380, 384. As the trial court clearly stated that it did not consider the evidence that Simmons contests, we conclude that he cannot overcome the presumption that the trial court only considered admissible evidence. Accordingly, Simmons' second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "[SIMMONS] WAS DENIED A FAIR TRIAL WHEN JOURNAL ENTRIES OF [SIMMONS'] PRIOR CONVICTIONS WERE ACCEPTED AS EVIDENCE BY THE TRIAL COURT."
 {¶ 16} In his third assignment of error, Simmons contends that he was denied a fair trial when journal entries of his prior convictions were accepted as evidence by the trial court. We do not agree.
 {¶ 17} In his argument, Simmons urges this Court to follow the holding in Old Chief v. United States (1997), 519 U.S. 172, that a trial court should allow defense counsel to stipulate to a prior conviction in cases of possessing weapons under disability. Further, Simmons argues that in cases where a prior conviction is an element of a charge the journal entry should be excluded pursuant to Evid. R. 403. See Id. at 19.
 {¶ 18} This Court has previously discussed the impact of Old Chiefon the State's ability to refuse to accept a stipulation, and found thatOld Chief was inapplicable to State prosecutions as the Court in OldChief "construed a federal statute. Accordingly, the decision is not binding *Page 8 
upon this Court's interpretation of an Ohio statute." State v. Kole
(June 28, 2000), 9th Dist. No. 98CA007116, at *4,; see, also, State v.Baker, 9th Dist. No. 23840, 2008-Ohio-1909, at ¶¶ 11-13.
 {¶ 19} Under Ohio law, "[n]either the state nor the trial court is required to accept a defendant's stipulation as to the existence of the conviction." State v. Smith (1990), 68 Ohio App.3d 692, 695. SeeState v. Twyford (2002), 94 Ohio St.3d 340, 359. Therefore, we cannot conclude that the trial court erred by accepting the redacted journal entries of Simmons' prior criminal history on the basis of OldChief. We further note that Simmons chose to testify at trial and as such, admitted his prior felony convictions. Accordingly, Simmons' third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED BY DENYING [SIMMONS'] CRIMINAL RULE 29 MOTION BECAUSE THE RAPE CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 20} In his fourth assignment of error, Simmons contends that the trial court erred in denying his Crim. R. 29 motion because the rape conviction was not supported by sufficient evidence. We do not agree.
 {¶ 21} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is *Page 9 
whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 22} Simmons contends that his rape conviction was not based on sufficient evidence. Pursuant to R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Simmons contends that the State did not demonstrate that Simmons compelled S.W. to engage in sexual conduct by force or threat of force, but that the sexual conduct was consensual. Simmons specifically contends that "[a] review of S.W.'s testimony shows that she never asked Simmons to stop his sexual contact[.]" Our review of the testimony does not support this contention.
 {¶ 23} Simmons concedes in his brief that "[d]uring her testimony, S.W. alleged that Simmons choked her and raped her." It appears that he contends that S.W.'s testimony was not credible as she testified that after the rape, she "calmly checked her electronic mail and played with her computer. The rape allegation only surfaced after S.W. became upset seeing Simmons being affectionate to another woman." The issue of credibility goes to the manifest weight of the evidence, not the sufficiency of the evidence. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390. Simmons has failed to separately assign error with regard to his contention that the conviction was against the manifest weight of the evidence. Pursuant to App. R. 12(A)(2), we may disregard an argument if the appellant fails to argue the assignment of error separately in his brief, as required under App. R. 16(A). Therefore, we focus solely on the sufficiency of the evidence.
 {¶ 24} S.W. testified that on the night in question, she was lying in her bed when Simmons came into her room and informed her that he wanted to have sexual relations. She testified that she told him that she was not in the mood and to leave her alone. According to *Page 10 
S.W., Simmons approached her from the side and pulled out a knife, which he ran up her tank top to her throat. He informed her that if she did not take her clothes off, he would do it for her. S.W. testified that she was terrified that Simmons was going to hurt her and was in shock. She stated that when she told him no, Simmons said, "You can't tell me no, you are my woman." S.W. testified that she had had consensual sex with Simmons in the past and that this encounter was very different. S.W. stated that prior to taking off her clothes, Simmons choked her. "He was on top of me, and he took his fingers like this and choked me until I blacked out." She stated that during this time she was screaming that he was hurting her. Simmons forced S.W. to perform oral sex on him and then proceeded to have vaginal intercourse with her. She stated that he forced her into positions that hurt, and that she again told him no. S.W. testified that after the rape was completed, Simmons fell asleep on top of her. In viewing this evidence in the light most favorable to the prosecution, we find that the trial court could have found that the State proved the essential elements of rape beyond a reasonable doubt. Accordingly, Simmons' fourth assignment of error is overruled.
 III. {¶ 25} Simmons' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. Costs taxed to Appellant.
CARR, J. BELFANCE, J., Concur. *Page 1